WILLIAM K. HARRINGTON　　　　　　　　　　　　Hearing Date:　May 28, 2025
UNITED STATES TRUSTEE　　　　　　　　　　　　Hearing Time:　10:00 a.m.
Department of Justice
Office of the U.S. Trustee
Alexander Hamilton U.S. Custom House
One Bowling Green, Rm. 534
New York, NY 10004
(212) 510-0500
By:　Rachael E. Siegel
　　　Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                     :

In re                                    :        Case No. 24-22431 (SHL)
                                     :

SANTIAGO QUEZADA, SR.,           :        (Chapter 11)
                                     :
                     Debtor.          :        Subchapter V
                                     :
---------------------------------------------------------x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon this Notice of Motion and the accompanying memorandum of law and declaration of Madeleine Vescovacci (the "**Vescovacci Decl.**"), William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), will move this Court before the Honorable Sean H. Lane, United States Bankruptcy Judge, in the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601 on **May 28, 2025 at 10:00 a.m.** (the "**Hearing**"), or as soon thereafter as counsel can be heard, for an dismissing the chapter 1 case, and for such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held in a hybrid manner. Participants wishing to appear virtually via Zoom for Government are required to register their

appearance by 4:00 PM the day before the Hearing by using the utilizing the Electronic Appearance portal located on the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that any responsive papers should be filed with the Court and served on the United States Trustee via email, attention: Rachael Siegel, Esq. (rachael.e.siegel@usdoj.gov).

Dated: April 22, 2025
      New York, New York

                                      WILLIAM K. HARRINGTON
                                      UNITED STATES TRUSTEE

                    By:    */s/ Rachael E. Siegel*
                            Rachael E. Siegel
                            Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
                                              :
In re                                         :    Case No. 24-22431 (SHL)
                                              :
SANTIAGO QUEZADA, SR.,                        :    (Chapter 11)
                                              :
                              Debtor.         :    Subchapter V
                                              :
------------------------------------------------------x
```

## MEMORANDUM OF LAW OF THE UNITED STATES TRUSTEE IN SUPPORT OF MOTION FOR AN ORDER DISMISSING THIS CASE

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

This memorandum of law is in support of the motion (the "**Motion**") of William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), for an order dismissing the case of Santiago Quezada, Sr. (the "**Debtor**"). In support thereof, the United States Trustee respectfully alleges the following:

## INTRODUCTION

This subchapter V case has a troubled history. In fact, one of the Debtor's creditors has had enough doubt about the Debtor's candor in this case that she has sought the expansion of the subchapter V trustee's powers. Most recently, the Debtor's purported counsel filed a motion to withdraw. Now, the Debtor intends to *pro se* pursue an appeal of this Court's order denying his motion to challenge a late-filed proof of claim asserting a nearly $3 million claim against the estate. Regardless of whether the Debtor retains counsel and notwithstanding the Debtor's pending appeal, cause exists under 11 U.S.C. § 1112(b) to dismiss this bankruptcy case.

First, it is unlikely that the Debtor has the financial wherewithal to propose a feasible plan of reorganization. Recent monthly operating reports show that the Debtor is spending more

money than he is taking in each month, notwithstanding owing a judgment creditor at least $1,635,000 (the creditor has filed a proof of claim for nearly $3 million) and the Small Business Association nearly $400,000, among other debts. The Debtor makes income through a fish market, and he used to manage a club as well. While he no longer operates this club, and has not operated the club for several years, he is inexplicably paying rent for the club space. The Debtor is also making no efforts to curtail the costs of his lifestyle, punctuated with frequent meals at restaurants and ownership of two luxury vehicles. All this background demonstrates that the Debtor is grossly mismanaging his estate, which gives rise to cause to dismiss the case.

Cause also exists to dismiss this case because the Debtor has failed to timely provide information reasonably requested by the United States Trustee and by the subchapter V trustee. For example, he has failed to demonstrate that his assets are adequately insured. Additionally, cause exists to dismiss this case because the Debtor has failed to file a confirmable plan. In electing to proceed under subchapter V, the Debtor chose to accept the responsibilities in addition to the significant benefits that subchapter V affords small business debtors. But the Debtor is not pursuing a plan of reorganization in good faith. Accordingly, this case should be dismissed.

## **FACTS**

1. On May 14, 2024, the Debtor filed a voluntary petition for relief (the "**Petition**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), electing to pursue relief under subchapter V of the Bankruptcy Code. ECF No. 1.

2. On May 17, 2024, the United States Trustee appointed Eric Huebscher as subchapter V trustee. ECF No. 4.

3. A motion to expand the subchapter V trustee's duties pursuant to 11 U.S.C. § 1183(b)(2) is pending. ECF No. 45.

**A.**   **<u>The Pizarro Claim</u>**

4.   The Debtor lists Maria Jose Pizarro as a creditor holding the largest unsecured claim against him. Ms. Pizarro's claim is listed by the Debtor as a disputed claim for $1,635,000 on account of "Judgment Liens." *See* Official Form 104, ECF No. 11.

5.   The Court entered an order setting September 13, 2024, as the last day on which non-governmental entities must file proofs of claim. ECF No. 16.

6.   On December 9, 2024, Ms. Pizarro filed a proof of claim against the Debtor, asserting a claim in the amount of $2,972,108.13. Claim No. 6.

7.   On December 23, 2024, the Debtor filed an objection to Ms. Pizarro's claim. ECF No. 31.

8.   On January 7, 2025, Ms. Pizarro filed a cross-motion to file a proof of claim after the bar date. ECF No. 35.

9.   On March 17, 2025, the Court entered an order denying the Debtor's objection and granting Ms. Pizarro's cross-motion, which was supplemented with a modified bench ruling reaching the same conclusions. ECF Nos. 55, 65, 66.

10.   On March 31, 2025, the Debtor filed a notice of appeal to the Court's order denying the Debtor's objection to Ms. Pizarro's claim. ECF No. 67.

11.   On April 14, 2025, the Debtor filed a designation of contents and statement of issues relating to this appeal. ECF No. 71.

**B.**   **<u>The Debtor's Legal Representation</u>**

12.   Norma Ortiz, Esq., has appeared and filed papers on behalf of the Debtor. Ms. Ortiz has not filed a retained application. *See* Vescovacci Decl. at ¶ 5.

13.   On March 20, 2025, Ms. Ortiz filed a motion to withdraw as attorney. ECF No.

58.

14. This motion is supported by an affidavit signed by the Debtor that explains the Debtor discharged Ms. Ortiz as of March 19, 2025. ECF No. 61.

15. No other attorney has filed a notice of appearance or appeared on behalf of the Debtor; upon information and belief, the Debtor has not retained new counsel. *See* Vescovacci Decl. at ¶ 5.

**C.     The Plan**

16. On November 12, 2024, the Debtor filed a Small Business Subchapter V Chapter 11 Reorganization Plan (the "**Plan**"). ECF No. 28. The Plan as filed does not contain suitable and adequate information for it to be confirmed.

17. As of the date hereof, the Plan (a) does not provide cash flow projections, (b) does not include a form of ballot, and (c) has not been noticed for a hearing. *Id.*; *see also* Vescovacci Decl. at ¶¶ 8-10.

18. The Plan provides that it "shall be funded from Debtor's Cash on hand, his disposable income, a sale of assets, and/or a loan secured from a third party". Plan at 4.1.

**D.     Information in the Monthly Operating Reports**

19. The Debtor is current on filing monthly operating reports ("**MORs**").

20. In the MOR for October 2024, the Debtor noted that TD Bank closed the Debtor's debtor-in-possession bank account on or around September 23, 2024, and the Debtor thus had to deposit all the funds that had been in the debtor-in-possession bank account into a pre-petition bank account. ECF No. 32.

21. In the MOR for January 2025, the Debtor had an actual cash flow of -$3,011.56, notwithstanding that he had projected to have a positive cash flow of $500 comprised of $9,500 in

receipts and $9,000 in expenses. ECF No. 54.

22. In the MOR for February 2025, the Debtor had an actual cash flow of -$4,795.39, notwithstanding that he had again projected a positive cash flow of $500 comprised of $9,500 in receipts and $9,000 in expenses. ECF No. 57.

23. The Debtor included the same projections for March 2025, $9,500 in receipts and $9,000 in expenses. *Id*.

24. In both January 2025 and February 2025, the Debtor wrote checks to a Mr. Freedman that included $4,500 for "club rent". ECF Nos. 55, 57.

25. The Debtor previously operated a night club through an entity entitled Euros El Tina Restaurant and Billiards Corp. (the "**Lounge**"). *See* Plan, ECF No. 28. Per the Debtor, "[t]he Lounge has not operated for a number of years and has no assets of value". *Id*. *See also* Vescovacci Decl. at ¶ 24.

26. In January 2025, the Debtor ate meals at restaurants at least nineteen times and regularly spent over $100 per meal. ECF No. 54; *see also* Vescovacci Decl. at ¶ 21.

27. During the same month, the Debtor also spent $739.83 at Shoprite. *Id*.

28. In February 2025, the Debtor ate meals at restaurants at least eighteen times, spending a *minimum* of $112.76 at each sitting, and up to $244.92. ECF No. 57; *see also* Vescovacci Decl. at ¶ 22.

29. During the same month, the Debtor also spent $463.05 at Shoprite. *Id*.

30. The Debtor owns two Mercedes Benzes—one is a 2024 GLS 600 Z4, which the Debtor believes is valued at $185,500, and one is a 2020 GLS that is in the Dominican Republic, *See* Schedule A/B, ECF No. 11.

31. The Debtor could not provide an estimate of the 2020 Mercedes Benz GLS's value.

32. In both January 2025 and February 2025, the Debtor remitted payments to Mercedes-Benz for $2,770.03. ECF Nos. 55, 57.

33. A summary of certain expenses that the Debtor discloses paying from his debtor-in-possession bank accounts, as attached to the relevant MORs, is below:

| Date | Restaurant Meals | Groceries | Automobile Expenses | Travel |
|---|---|---|---|---|
| Sep-24 | $2,497.41 | $1,496.33 | $492.29 | $58.36 |
| Oct-24 | $1,805.03 | $766.42 | $5,540.06 | $2,351.90 |
| Nov-24 | $2,005.37 | $0 | $4,231.89 | $422.44 |
| Dec-24 | $2,964.00 | $640.13 | $2,871.86 | $42.37 |
| Jan-25 | $2,398.86 | $739.83 | $2,916.49 | |
| Feb-25 | $2,876.75 | $463.05 | $6,683.05 | |
| **Total** | $14,997.42 | $4,105.76 | $22,735.64 | $2,875.07 |

34. The Debtor also reported a negative cash flow in his MORs as follows:

| Date | Revenue | Net Cash Flow |
|---|---|---|
| Sep-24 | $10,003.46 | $4,785.33 |
| Oct-24 | $0.88 | - $22,663.35 |
| Nov-24 | $13,436.22 | $4,249.88 |
| Dec-24 | $17,616.15 | $7,218.49 |
| Jan-25 | $12,489.75 | - $2,511.56 |
| Feb-25 | $10,071.85 | - $4,295.39 |
| **Total** | $63,618.31 | - $13,216.60 |

E. **Outstanding Information Requests by the United States Trustee**

35. The United States Trustee has asked the Debtor and his counsel for many documents and pieces of information that remain outstanding, including:

- An explanation as to why TD Bank closed the Debtor's debtor-in-possession bank account on September 27, 2024;

- Proof that the Debtor closed a pre-petition bank account with Chase Bank;

- Statements from any foreign bank accounts the Debtor may own; and

- Information about potentially incomplete insurance coverage.

*See* Vescovacci Decl. at ¶¶ 14-20, 25-26.

36. The subchapter V trustee has also made numerous requests for information from the Debtor and Debtor's counsel that have, upon information and belief, gone unanswered. *See* Vescovacci Decl. at ¶ 27.

## ARGUMENT

### I. Dismissal or Conversion is Appropriate Under 11 U.S.C. § 1112(b)

Section 1112(b) of the Bankruptcy Code provides that on request of a party in interest, and after notice and a hearing, "the court <u>shall</u> convert a case under [chapter 11] to a case under chapter 7 or dismiss [the case] . . ., whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1) (<u>emphasis added</u>). Section 1112(b)(4) contains sixteen examples of events that constitute cause for conversion or dismissal. *See, e.g., In re FRGR Managing Member, LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009). This list of events is illustrative and not exhaustive, and courts may consider other factors. *Id.; see also In re Gucci*, 174 B.R. 401, 409 (Bankr. S.D.N.Y. 1994) (noting that bankruptcy court was "not limited to the ten, non-exhaustive, enumerated grounds in 11 U.S.C. § 1112(b)(1)-(10) for finding cause.").

Cause exists to dismiss this case for the following reasons:

- The estate has been grossly mismanaged (§ 1112(b)(4)(B));

- The Debtor has failed timely to provide information or attend meetings reasonably requested by the United States Trustee (or the bankruptcy administrator, if any) (§ 1112(b)(4)(H)); and

- The Debtor has failed to confirm a plan (§ 1112(b)(4)(J)).

### A. <u>The Debtor is Grossly Mismanaging his Estate</u>

Cause exists to dismiss this case because there is gross mismanagement of the estate. 11

7

U.S.C. § 1112(b)(4)(B); *see also, e.g., In re Weiss Multi-Strategy Advisers LLC,* 2024 Bankr. LEXIS 1256, 2024 WL 2767893 (Bankr. S.D.N.Y. May 29, 2024). A debtor's "excessive accrual of expenses" indicates that there has been gross mismanagement of the estate. *In re JJ Arch LLC,* 663 B.R. 258, 278 (Bankr. S.D.N.Y. 2024). The Debtor appears to eat at restaurants, spending extravagant amounts of money, most days, in addition to significant expenditures on groceries; over the past six months, he has spent an average of $3,183.86 per month on food. The Debtor owns two recent model luxury vehicles, and between payments to Mercedes-Benz and payments for automobile insurance and gasoline, he has spent $22,735.64 over the past six months, $3,789.27 monthly on average, for maintaining these vehicles. As the United States Trustee reminded the debtor almost six months ago, living expenses for a debtor should be reasonable. *See* Vescovacci Decl. at ¶ 17. Operating costs for luxury vehicles together with regular extravagant dining in restaurants do not appear reasonable - and nor has the Debtor provided any explanation as to the necessity or reasonableness of these costs. The Debtor has made no efforts to curtail his excessive spending as his estate continues to depreciate on a month-to-month basis. *See* ECF Nos. 55, 57. Over the past six months, the Debtor has spent $37,733.06 on restaurant meals and on automobile expenses, which accounts for more than half of the total revenue the Debtor brings in each month.

The Debtor is also neglecting his fiduciary duties by failing to keep interested parties and the Court appraised of his business operations. *See JJ Arch,* 663 B.R. at 278 ("implicit in Section 1112(b)(4)(B) is the understanding that a debtor-in-possession is a fiduciary as to the estate, a position that imposes upon a debtor the obligation to 'keep the Court and other parties in interest apprised of the Debtor's business operations.'") (internal citations omitted). At the beginning of this case, the Debtor explained that he is the sole shareholder of a fish market and take-out

8

restaurant, and he is also the sole shareholder of the Lounge. *See* Declaration of Santiago Quezada Pursuant to Local Bankruptcy Rule 1007-2, ECF No. 2. This business is no longer operating. *Id*. Yet, the Debtor is making significant monthly payments for "club rent"—presumably referring to the premises where the Lounge used to operate—in addition to rent payments for the fish market. The Debtor has signed the rent checks himself, which begs the question of why these payments continue to be made. *See* Vescovacci Decl. at ¶ 23. Perhaps the Lounge is operating again, in which case the Debtor is obligated to inform the Court and parties in interest of its operations, or these handouts from the Debtor could be something much more nefarious. This monthly $4,500 rent payment that the Debtor is making does not seem to benefit the estate and is in addition to the thousands of dollars that the Debtor spends on restaurant meals and maintaining a luxury vehicle.

In any instance, the Debtor is ignoring his obligations as an estate fiduciary and grossly mismanaging his estate; thus, the case should be dismissed.

B.  **The Debtor has Failed to Timely Provide Information**

Disclosure is a cornerstone of the bankruptcy process, and "the success of an individual Subchapter V case [. . .] depends in part on 'the openness and transparency of the debtor with the Subchapter V Trustee, the U.S. Trustee, creditors, and with the Court.'" *In re N.Y. Hand & Physical Therapy PLLC*, 2023 Bankr. LEXIS 1028 at *4 (Bankr. S.D.N.Y. 2023) (*citing In re Corinthian Commc'n, Inc.,* 642 B.R. 224, 225 (Bankr. S.D.N.Y. 2022)). Here, the Debtor has failed to provide proof of closing his pre-petition bank accounts and did not provide information about the closure of his debtor-in-possession bank account, which constitutes cause to dismiss the case pursuant to 11 U.S.C. § 1112(b)(4)(H). *See* Vescovacci Decl. at ¶¶ 14-16; s*ee also, e.g., In re Rondaxe Props., LLC*, 2015 Bankr. LEXIS 2140 at *6-7 (Bankr. W.D.N.Y. June 30, 2015); *see*

*also In re Linden LLC,* 2011 U.S. Dist. LEXIS 78843 at *14 (E.D.N.Y. July 20, 2011) (upholding a dismissal for cause "based on the debtor's ongoing three-month failure to comply with the U.S. Trustee's request for tax returns and documents regarding the debtor's use of funds to pay the personal expenses of its principal.").

Another troubling piece of information that has come to light is the fact that insurance covering the Debtor's business is only going to be conditionally renewed. *See* Vescovacci Decl. at ¶¶ 25,26. Section 1112(b)(4)(C) introduces another factor that establishes cause to dismiss a chapter 11 case, failure to maintain appropriate insurance that poses a risk to the estate or to the public. 11 U.S.C. § 1112(b)(4)(C). Despite repeated attempts from the United States Trustee for more information to establish whether the Debtor's assets are adequately insured, no information has been provided to explain this potential deficiency. Accordingly, the Debtor's failure to provide information reasonably requested by the United States Trustee precipitates dismissal of the case.

### C. The Debtor has Failed to Confirm a Plan

Under section 1112(b)(4)(J) of the Bankruptcy Code, a debtor's "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" constitutes "cause" for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(J). Under section 1189(b) of the Bankruptcy Code, a debtor who has elected to proceed under subchapter V of chapter 11 must "file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b).

Here, the Debtor elected to proceed under subchapter V. While the Debtor did file a plan by the extended deadline established by the Court, the Debtor's Plan is not in compliance

with 11 U.S.C. § 1190, and the Debtor has failed to make any progress to confirm the Plan.[1] *See In re Baker*, 625 B.R 27, 37 (Bankr. S.D. Tex. 2020) ("[t]he intentionally expedited nature of subchapter V cases dictates an abbreviated deadline under § 1189 that is not intended to be manipulated by placeholder plans").

Subchapter V bestows significant benefits to a chapter 11 debtor, but those benefits are accompanied by the responsibility to not only abide by statutory deadlines, but to file a meaningful plan that fulfills the requirement of the code, is proposed in good faith and is meant to move forward.

Here, the Plan is deficient on its face and would be impossible to confirm. The Plan does not contain any "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." 11 U.S.C. §1190(1)(C). In fact, the Plan only contains a plethora of generic terms to describe how it will be funded - it provides that the Plan "shall be funded from Debtor's Cash on hand, his disposable income, a sale of assets, and/or a loan secured from a third party". Plan at 4.1. These are, surely, a menu of options available to nearly *any* debtor looking to reorganize. Without any specificity, it is unclear how the Debtor is even planning to reorganize, let alone whether he has made any progress in doing so.

The United States Trustee respectfully submits that the Debtor's failure to comply with section 1190 of the Bankruptcy Code renders this Plan in violation of section 1112(b)(4)(J) of the Bankruptcy Code. Accordingly, there is cause to convert or dismiss this case.

---

[1] SBRA Legal Manual 1 (Jan. 2020), https://www.justice.gov/ust/file/sbra_legal_manual.pdf/download ("The legislative purpose of the SBRA was to provide a fast track for small businesses to confirm a consensual plan with the assistance of a private trustee.").

II. **There are No Unusual Circumstances Establishing that Dismissal is Not in the Best Interests of Creditors and the Estate**

Under section 1112(b)(2) of the Bankruptcy Code, after the movant shows cause, the burden shifts to the debtor and other parties in interest to show that there are "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). There are no unusual circumstances in this case that would establish that dismissal is not in the best interests of creditors and the estate.

III. **The United States Trustee Recommends Dismissal**

As set forth above, the Debtor fails to fulfill its obligations and provide information to the United States Trustee and to the Court. The Debtor is reaping the benefits of the bankruptcy process while disregarding its obligations and forcing parties in interest and the Court to operate in an information vacuum. Should the case be converted to a case under Chapter 7, the Debtor could continue to try to gamify the bankruptcy process. Accordingly, the United States Trustee recommends the dismissal of this case rather than conversion.

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order dismissing this chapter 11 case pursuant to 11 U.S.C. § 1112(b) and granting such other and further relief as may be deemed just and proper.

Dated: New York, New York
April 22, 2025

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By: */s/ Rachael E. Siegel*
Rachael E. Siegel
Trial Attorney

```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                        :
In re                                   :    Case No. 24-22431 (SHL)
                                        :
SANTIAGO QUEZADA, SR.,                  :    (Chapter 11)
                                        :
                         Debtor.        :    Subchapter V
                                        :
-------------------------------------------------------- x
```

# DECLARATION OF MADELEINE VESCOVACCI
# IN SUPPORT OF MOTION FOR AN ORDER DISMISSING THIS CASE

Pursuant to 28 U.S.C. § 1746, Madeleine Vescovacci declares as follows:

1. I am a bankruptcy auditor in the Office of the United States Trustee for Region 2 (the "**United States Trustee**"). I am assigned to this matter by my office and as such, have knowledge and information about this Chapter 11 bankruptcy case. I submit this declaration in support of the United States Trustee's Motion for an Order Dismissing this Case (the "**Motion**").

2. I have reviewed the electronic docket for this bankruptcy case.

3. My review of the docket shows that Santiago Quezada, Sr. (the "**Debtor**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, electing to proceed as a small business Debtor pursuant to subchapter V of the Bankruptcy Code, on May 14, 2024. *See* ECF No. 1.

4. To date, no retention application has been filed on the electronic case docket and no attorney has filed a notice of appearance on behalf of the Debtor.

5. My review of the docket reflects that Norma Ortiz has filed papers on behalf of the Debtor but has since filed a motion to withdraw as counsel.

6. I have reviewed the Debtor's Small Business Subchapter V Chapter 11 Reorganization Plan filed on the docket at ECF No. 28 (the "**Plan**").

7. My review of the docket and the Plan show that the Plan has not been noticed for a hearing.

8. The Plan does not include cash flow projections, and I have not been provided with cash flow projections by the Debtor or his representatives.

9. The Plan does not include a form of ballot, and I have not been provided with a form of ballot by the Debtor or his representatives.

10. I have reviewed the monthly operating report ("**MOR**") for the month of October 2024, which includes a note explaining that TD Bank closed the Debtor's debtor-in-possession bank account on September 24, 2024.

11. The bank account receipts attached to the October 2024 MOR show that the Debtor withdrew $115,848 from the TD Bank debtor-in-possession account on September 23, 2024, and deposited this full amount into a pre-petition bank account on September 27, 2024.

12. On October 3, 2024, the Debtor's funds were deposited into the Debtor's new debtor-in-possession bank account at Chase Bank.

13. I asked the Debtor's proposed counsel why TD Bank closed the Debtor's debtor-in-possession account and never received an explanation.

14. The October 2024 MOR also shows that the Debtor's pre-petition bank account at Chase Bank maintained a balance of $2,200 as of October 4, 2024.

15. I asked the Debtor and his proposed counsel for evidence that this pre-petition bank account had been closed and never received any evidence of the same.

16. I noticed that the majority of the Debtor's expenses in the October 2024 MOR were for meals in restaurants, and that the same MOR did not reflect any essential living expenses. Accordingly, I advised the Debtor in or around November of 2024 that a debtor in bankruptcy must only incur reasonable living expenses.

17. The Debtor and Debtor's counsel have informed me that the Debtor frequently spends time in the Dominican Republic and the Debtor was in the Dominic Republic in both November and December 2024.

18. I have asked the Debtor to disclose any bank accounts that he has in the Dominican Republic but have not been provided with any documentation showing how the Debtor pays for expenses in the Dominican Republic.

19. My review of the MOR for January 2025 shows that the Debtor ate meals at restaurants at least nineteen times during that month and regularly spent in excess of $100 at a sitting.

20. My review of the MOR for February 2025 shows that the Debtor ate meals at restaurants at least eighteen times. He spent at least $112.76 each time he ate at a restaurant, and one restaurant expense was $244.92.

21. In both the January 2025 MOR and February 2025 MOR, the Debtor attached checks made out to a Mr. Freedman signed by the Debtor on the first of each month for $10,500, including in the description "Tina Rent – 6000, Club – 4500".

22. The Debtor has not provided any documents showing that he receives any revenue on account of Euros El Tina Restaurant and Billiards Corp.

23. On January 14, 2025, I advised the Debtor's counsel that the United States Trustee received a renewal notice from Utica First Insurance Company on behalf of the Debtor's business,

El Tina Fish Market Corp, indicated that the insurance would only be conditionally renewed. I asked Debtor's counsel for an explanation as to why the insurance would be conditionally renewed, and what that would entail.

24. I sent Debtor's counsel another email re-explaining the United States Trustee's concerns with the renewal notice from Utica First Insurance Company on February 21, 2025. I have not received a response.

25. I have been carbon copied on at least five emails from the subchapter V trustee requesting outstanding information from the Debtor that have not been answered to my knowledge.

Dated: New York, New York                                            By:    */s/Madeleine Vescovacci*
       April 22, 2025

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                               :

In re                                          :          Case No. 24-22431 (SHL)

SANTIAGO QUEZADA, SR.,        :          (Chapter 11)

                               Debtor.         :          Subchapter V

---------------------------------------------------------x

# ORDER DISMISSING CHAPTER 11 CASE

Upon the motion of William K. Harrington, the United States Trustee for Region 2, to dismiss this Chapter 11 case (ECF No. ___) (the "**Motion**"); and the Court having determined notice of the Motion is sufficient; and the Court having held a hearing on May 28, 2025; and the Court having found that cause exists to dismiss this case under 11 U.S.C. § 1112(b), it is hereby:

**ORDERED**, that the Motion is granted; and it is further

**ORDERED**, that the Debtor's case commenced under Chapter 11 of the Bankruptcy Code be and hereby is dismissed pursuant to 11 U.S.C. § 1112(b).

Dated: New York, New York
        _____, 2025

                                                             /s/_____
                                                             HONORABLE SEAN H. LANE
                                                             UNITED STATES BANKRUPTCY JUDGE